UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.D., <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF KERN, et al., <br><br> Defendants. | Case No.: 1:20-cv-00064-DAD-JLT <br><br> FINDINGS AND RECOMMENDATIONS GRANTING APPROVAL OF THE COMPROMISE ON BEHALF OF MINOR PLAINTIFF D.D. <br><br> (Doc. 22) |

In this action, D.D. by and through his guardian ad litem, Tom Durbin, claimed that he was subjected to excessive force by the defendant juvenile corrections officer. The plaintiff seeks the Court's approval for the settlement. (Doc. 22.) Because the Court finds the proposed settlement of the child's claims to be fair and reasonable, the Court recommends that the minor's compromise be approved.[1]

**I.      Factual and Procedural History**

This case arises from an incident that occurred in the James G. Bowles Juvenile Hall in Kern County, California on January 17, 2019. (Doc. 23 at 4; Doc. 1 at 5-7, Complaint ¶¶ 22-36.) Plaintiff, who has been diagnosed with autism and other disabilities, alleges through his father/guardian ad litem

---

[1] Because the motion is unopposed and because the memorandum in support of the petition adequately sets forth the information required under Local Rule 202(b), there is good cause to approve the settlement without a hearing.

1    that he was subjected to excessive force by the defendant juvenile corrections officer. (Id.) This force
2    resulted in a broken elbow that required surgery, three screws, and a lengthy recovery period. (Id.)

3          The complaint alleges civil rights violations and claims for relief under state law. (Doc. 23 at
4    4.) Liability is contested, and defendants deny the allegations and contend that the force used was
5    appropriate under the circumstances. (Id.) Specifically, Defendant Cloud contends that Plaintiff's
6    injury resulted from Plaintiff's attempts to pull away from him, such that Plaintiff caused the injury to
7    himself. (Id.) Plaintiff alleges that what the defendant juvenile corrections officer interpreted as the
8    non-compliant behavior justifying force—attempting to walk back to his cell—was what Plaintiff had
9    been taught to do when confronted with a social situation that triggered uncontrollable anxiety. (Id.)

10         Plaintiff was evaluated immediately after the injury and was diagnosed with a fracture "of the
11   lateral supracondylar humerus extending down into the lateral humeral condyle . . . The fracture line
12   extends to the joint surface." (Doc. 23 at 4; Seabaugh Decl., Ex "B".) The surgery was performed
13   successfully in January 2019, and Plaintiff received follow-up care and physical therapy for the injury
14   regularly over the subsequent six months, for a total of ten additional doctors' visits. (Doc. 23 at 5.) He
15   wore a splint for two weeks, was instructed to avoid bearing any weight with the injured arm
16   throughout the recovery period and was advised to avoid any risk to falling or re-injuring the arm.
17   (Doc. 23 at 5; Doc. 23 at 39, Durbin Decl., ¶ 3.[2]) In a follow-up medical visit on March 5, 2019, the
18   treating physician observed: "There has been almost complete healing of the lateral humeral condylar
19   fracture. The transfixing screws remain intact and in place. Fracture and elbow joint alignments are
20   anatomic. There is no acute bony abnormality." (Doc. 23 at 5; Seabaugh Decl., Ex "B".) At the
21   successful conclusion of the physical therapy sessions in June 2019, treatment was discontinued, and
22   no additional medical treatment was recommended. (Doc. 23 at 5.)

23         Plaintiff continues to complain of limited range of motion and diminished strength in the
24   injured arm. (Doc. 23 at 5; Doc. 23 at 39, Durbin Decl., ¶ 4.) He also experiences aches and
25   discomfort when he exerts the injured arm. (Id.) However, his symptoms are consistent with what the
26   family understood they were to expect in terms of the lengthy process of recovery, and these

---

28   [2] The Court notes that the paragraph numbering in the declaration of Tom Durbin is not sequential; the paragraph 3 referenced here is included on page 3 of the declaration. (Doc. 23 at 39.)

symptoms are expected to improve with time and with exercises at home. (Id.) Plaintiff has not sought any additional evaluation or treatment for his condition following the conclusion of his physical therapy sessions in June 2019. (Id.) In the event he requires additional treatment in the future, the settlement proceeds will more than suffice for him to purchase and maintain health insurance and to purchase any desired future treatment (such as additional physical therapy sessions once the quarantine is over). (Id.)

No outstanding balance is owed by Plaintiff to Kern Medical, where the surgery was performed, as the cost was paid or otherwise adjusted by the County of Kern (which has not asserted and has agreed to waive any claim for reimbursement as part of the settlement). (Doc. 23 at 5-6; Seabaugh Decl., Ex "B"; Seabaugh Decl., ¶ 18 (settlement demand and conditions).) The physical therapy sessions were covered by Medi-Cal, which asserts a lien for reimbursement in the amount of $374.37 (reduced from $499.16). (Doc. 23 at 6; Seabaugh Decl., Ex "B".)

Accordingly, Plaintiff's recoverable past economic damages are $374.37 only. (Doc. 23 at 6; Seabaugh Decl., ¶ 4.) The remainder of the $25,000 settlement is to account for Plaintiff's claims for past and future physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress, which would otherwise be determined by a jury at trial. (Id.) Plaintiff also seeks punitive damages, also in amounts that would be determined at trial. (Id.) In addition, while no future treatment has been recommended or planned at this time, the settlement will permit Plaintiff to purchase and maintain health coverage in the event future evaluation or treatment may be desired in relation to the injured arm. (Doc. 23 at 6; Seabaugh Decl., ¶ 5.)

On December 15, 2020, Plaintiff filed a notice of settlement indicating that the parties reached a settlement. (Doc. 20.) Accordingly, the Court ordered the parties to file a petition for approval of the minor's compromise. (Doc. 21.) On December 30, 2020, Plaintiff filed a petition for approval of the minor's compromise. (Doc. 22.) Plaintiff also filed a confidential memorandum in support of the petition. (Doc. 23.)

**II.     Settlement Approval Standards**

No settlement or compromise of "a claim by or against a minor or incompetent person" is

effective unless it is approved by the Court.  Local Rule 202(b).  The purpose of requiring the Court's approval is to provide an additional level of oversight to ensure that the child's interests are protected. Toward this end, a party seeking approval of the settlement must disclose:

> the age and sex of the minor, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount . . . was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent.

Local Rule 202(b)(2).

The Ninth Circuit determined that Federal Rule of Civil Procedure 17(c) imposes on the Court the responsibility to safeguard the interests of child-litigants. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011).  Thus, the Court is obligated to independently investigate the fairness of the settlement even where the parent has recommended it.  *Id.* at 1181; *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").  Rather than focusing on the amount of fees to be awarded, the Court must evaluate whether the net amount to the child is fair and reasonable "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel" and "in light of the facts of the case, the minor's specific claim, and recovery in similar cases."  *Robidoux*, 638 F.3d at 1181-1182.

### III.     Discussion and Analysis

The petition for approval of the settlement reached on behalf of the child D.D. sets forth the information required by Local Rule 202(b)(2). D.D. was a minor and turned 18 while this action was pending. (Doc. 23 at 3-4.) However, Plaintiff provides that in light of his young age and his prior diagnoses with autism and other mental health conditions, he has consented for his father to continue in the role of his guardian ad litem. (Id. at 4.) Plaintiff, through his guardian ad litem, asserts that the child's damages arise from being subjected to excessive force by the defendant juvenile corrections officer. (Id.)

///

### A. Award to D.D.

The proposed gross settlement of this claim is $25,000, to be distributed as follows: Medi-Cal Lien, $374.37; Attorney's Fee, $5,625.00; Attorney's Reimbursed Costs, $778.48; and Disbursement to Client, $18,222.15. (Doc. 23 at 2.) The funds are proposed to be made payable to the Law Office of Thomas C. Seabaugh Client Trust Account, from which the outstanding lien will be paid and the net proceeds will be disbursed in the form of a check made out to both D.D. and Tom Durbin. (Id. at 6.)

In terms of the plans for the use of the funds, D.D. and his father have discussed this, and their proposed plan is to make $1,000 available immediately to D.D. for his personal use, and for the balance to be placed in a long-term savings account in D.D.'s name. (Doc. 23 at 6-7; Doc. 23 at 39, Durbin Decl., ¶ 5.) D.D. has promised to use these funds only to purchase and maintain health insurance, to pursue additional education after high school if he wishes, to make a down payment on a condo or house once he is able to live and support himself independently, to pay for any future medical care in connection with his injured arm that is for any unforeseen reason not covered by insurance, or to meet D.D.'s other reasonable needs. (Id. at 7; Doc. 23 at 39-40, Durbin Decl., ¶ 5.) The funds will be used for the benefit of D.D. only, and D.D. has agreed to this framework to make sure that the funds are not squandered or spent frivolously. (Id.)

### B. Proposed Attorney Fees and Costs

Following the incident, Tom Durbin initially contacted and consulted with the local Bakersfield law firm of Chain Cohn Stiles, who referred the case to The Law Office of Thomas C. Seabaugh, who agreed to be jointly retained along with Chain Cohn Stiles. (Doc. 23 at 7.) The retainer agreement is a contingency fee agreement providing for the attorney's fee to equal 40 percent of any gross recovery, divided 90 percent to The Law Office of Thomas C. Seabaugh and 10 percent to Chain Cohn Stiles, and for any costs advanced to be reimbursed from the settlement proceeds. (Id.; see Seabaugh Decl., ¶ 6; Exh. "A".) As a condition of the settlement, Plaintiff's attorneys have agreed to reduce their contingency fee percentage from 40 percent to 25 percent, and Chain Cohn Stiles will waive its fee. (Doc. 23 at 7; Seabaugh Decl., ¶ 8.) Accordingly, The Law Office of Thomas C. Seabaugh on this application proposes only a contingency fee of 22.5 percent of the gross recovery, or $5,625. (Doc. 23 at 7-8; Seabaugh Decl., ¶ 8.)

Plaintiff's attorney asserts that the proposed attorney's fee is reasonable, in light of the fact that the attorney has worked on the case for more than a year and a half—since May 1, 2019. (Doc. 23 at 8; Seabaugh Decl., ¶ 12.) Plaintiff's attorney also states that this work included extensive consultations and communications with Plaintiff and his father throughout the process, the preparation of the government claim, ensuring compliance with applicable deadlines and statutes of limitations, preparing and filing the complaint, serving and reviewing initial disclosures, propounding and responding to written discovery, obtaining and reviewing the medical records (a protracted task during the pandemic), ascertaining the amount of any lien, and advising the client through the litigation and then through the settlement process. (Doc. 23 at 9; Seabaugh Decl., ¶ 16.)

Plaintiff's counsel sets forth that reimbursement for advanced costs is claimed in the amount of $48.48 for records retrieval and copies, $330.00 for service of process, and the filing fee of $400. (Doc. 23 at 9; Seabaugh Decl., ¶ 17, Exhibit "C.") Accordingly, the total requested reimbursement of advanced costs is $778.48. (Id.)

Based upon the actions taken by counsel, and the fact that Plaintiff's guardian ad litem indicates his assent to the fees and costs requested (see Doc. 23 at 38, Durbin Decl. ¶ 2, 4), the Court finds the award is reasonable.

### C. Recovery in Similar Actions

As noted above, the Court must consider the outcome of similar cases to determine whether the sum to settle the child's claims is reasonable. *See Robidoux*, 638 F.3d at 1181; *Salmeron*, 724 F.2d at 1363. Although Plaintiff did not identify any similar actions to support the approval of the minor's compromise, the Court finds the recovery is appropriate considering those received in other actions.

For example, in *K.B. v. City of Visalia*, 2016 U.S. Dist. LEXIS 132612, *2 (E.D. Cal. Sept. 27, 2016), K.B. was detained when he was eloping from school. It was alleged that the defendants knew or should have known that K.B. was a special needs child with behavioral issues, including ADHD and anxiety, and that defendants disregarded the behavioral issues when the detention of K.B. occurred, resulting in unnecessary injury to the minor. *Id.* It was also alleged that K.B. sought additional therapy sessions and calming medications as a result of the incident. *Id.* The minor's distribution was $11,685.15. *Id.* at *11.

Additionally, in *T.L. v. S. Kern Unified Sch. Dist.*, 2019 U.S. Dist. LEXIS 117517 (E.D. Cal. July 15, 2019), T.L., a minor with attention deficit hyperactivity disorder and other mental impairments, got into a physical altercation with another student and the Southern Kern Unified School District responded to the incident by suspending T.L. and recommending that he be expelled. *Id*. at *1-2. T.L. contested the District's action by filing a complaint with the California Office of Administrative Hearings under IDEA and California's special education laws, and after a hearing, the OAH issued a decision in favor of T.L., finding that T.L.'s conduct was a manifestation of his disabilities. *Id*. at *2. The settlement proceeds for the minor in that case was $24,750.00. *Id*. at *5.

Based upon the information provided in the motion and the supporting documents and considering the totality of the facts and circumstances of this case, the Court finds the settlement agreement is fair, reasonable, and in the best interests of the child.

**IV.     Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS** that the petition for approval of settlement be **APPROVED IN FULL** and that the parties be **DIRECTED** to file with the Court a stipulation for dismissal of the action with prejudice, and lodge a separate order, no later than 45 days after these findings and recommendations are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 24, 2021**              **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE